## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

TARA TAYLOR COFFMAN,        )
                               )
            **Plaintiff,**        )
                               )
**v.**                          )        **CIVIL ACTION NO. 3:14-24585**
                               )
**CAROLYN W. COLVIN,**       )
**Acting Commissioner of Social Security,**   )
                               )
            **Defendant.**     )

### M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on the Parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 12 and 13.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 4 and 6.)

The Plaintiff, Tara Taylor Coffman (hereinafter referred to as "Claimant"), filed applications for DIB on July 8, 2011, and SSI on June 27, 2011 (protective filing date), alleging disability as of August 17, 2005, due to neuropathy in legs, bulging discs in spine, anxiety, sleeplessness, and post-traumatic stress disorder. (Tr. at 223, 339-44, 345-51, 364, 368.) The claims were denied initially and upon reconsideration. (Tr. at 223, 266-71, 274-76, 282-84, 289-91, 293-95.) On February 13, 2012, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 296-97.) The hearing was held on January 7, 2013, before the Honorable Maria Hodges. (Tr. at 235-65.) By decision dated February 11, 2013, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 223-32.) The ALJ's decision became the final decision of the Commissioner on July 7, 2014, when the Appeals

Council denied Claimant's request for review. (Tr. at 1-7.) On August 11, 2014, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2013). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§

404.1520(f), 416.920(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace),

3

we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2) (2013).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since August 17, 2005, the alleged onset date. (Tr. at 225, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "degenerative disc disease status post cervical fusion, osteoarthritis, PTSD, and mood disorder," which were severe impairments. (Tr. at 225, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 227, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity to perform less than a full range of light exertional level work, as follows:

> She can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to extremes of cold, wetness, humidity, and vibration. She should avoid even moderate exposure to hazards. She can frequently reach bilaterally. She can have no production rates; no interaction with the public; and only occasional interaction with coworkers and supervisors.

(Tr. at 229, Finding No. 5.) At step four, the ALJ found that Claimant was unable to perform his past relevant work. (Tr. at 232, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a grader/sorter and hand packer, at the unskilled, light level of exertion and as an inspector and a security monitor, at the unskilled, sedentary level of exertion. (Tr. at 233-34, Finding No. 10.) On this basis,

benefits were denied. (Tr. at 234, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on June 17, 1962, and was 50 years old at the time of the administrative hearing, January 7, 2013. (Tr. at 232, 239, 339, 345.) Claimant had at least a high school education and was able to communicate in English. (Tr. at 232, 239, 367, 369.) Claimant had past relevant work as a hair stylist and telemarketer. (Tr. at 232, 259, 369, 384-91.)

Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

6

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to evaluate properly her credibility. (Document No. 12 at 5-9.) Claimant asserts that the objective medical evidence overwhelmingly supports a finding that she was not exaggerating the severity of her impairments. (Id. at 5-6.) In evaluating her credibility, Claimant asserts that the ALJ failed to follow the requirements of 42 U.S.C. § 423(d)(5)(A) and SSR 96-7p. (Id. at 7-9.) She asserts that the ALJ recited boilerplate language in her credibility assessment, which requires remand. (Id. at 8-9.)

In response, the Commissioner asserts that substantial evidence supports the ALJ's finding that Claimant's subjective complaints were not credible entirely. (Document No. 13 at 9-12.) Contrary to Claimant's allegation, the Commissioner asserts that the ALJ did not disregard the objective evidence in assessing her credibility. (Id. at 10.) Rather, the ALJ thoroughly considered and summarized the objective evidence, including clinical findings, imaging studies, and diagnostic testing. (Id.) To the extent that Claimant's subjective complaints were supported by the evidence of record, the ALJ accounted for them in her RFC assessment. (Id. at 11.) For instance, the Commissioner notes that the ALJ accommodated Claimant's complaints of difficulty lifting heavy objects and climbing, her postural difficulties, her environmental sensitivities, her difficulty in using her arms, and her difficulties with social interactions and pace. (Id.) Accordingly, the Commissioner contends that the ALJ's credibility assessment is supported by substantial evidence. (Id. at 12.)

Claimant also alleges that the Commissioner's decision is not supported by substantial evidence because the Appeals Council failed to consider properly the new and material evidence submitted subsequent to the ALJ's decision. (Document No. 12 at 9-11.) The new evidence consisted of an examination and medical assessment from Dr. Guberman, M.D., dated May 24, 2013, which indicated

that Claimant was disabled permanently from all types of work; a mental status statement from Dr. Razavipour, M.D., dated June 13, 2013, which indicated that Claimant's impairments would cause her to be absent from work five or more days per month; medical records from Prestera Center from February 22, 2012, through December 14, 2012, and March 16. 2013. Through April 30. 2014; lumbar MRI reports dated March 28, 2014; medical records from Dr. Alberico, M.D., from January 7, 2013, through March 31, 2014; medical records from Dr. Albaddawi, M.D., from January 7, 2013, through April 17, 2014; and medical records from Drs. Woolums and Wyner, M.D., from January 7, 2013, through April 18, 2014. (Id. at 10-11.) Claimant asserts that the Appeals Council improperly and summarily concluded that the records post-dated the ALJ's decision and did not affect the decision that she able to work prior to February 11, 2013. (Id. at 11.) She further asserts that the Appeals Council improperly suggested that she re-apply for benefits to consider the new evidence. (Id.)

In response, the Commissioner asserts that remand is not required for the ALJ to consider the records that were submitted initially to the Appeals Council. (Document NO. 13 at 12-13.) The Commissioner notes that the Appeals Council reviewed the newly submitted evidence and appropriately found that it did not affect the ALJ's decision because the evidence post-dated the ALJ's February 11, 2013, decision. (Id. at 12.) Claimant further notes that the relevant period extended from Claimant's alleged onset date of disability, August 17, 2005, through the date of the ALJ's decision, February 11, 2013. (Id. at 13.) The evidence submitted to the Appeals Council post-dated the ALJ's February 11, 2013, decision, and therefore, the Commissioner contends that the Appeals Council correctly advised Claimant to file a new application for benefits for the post-dated evidence. (Id.)

Analysis.

1. Claimant's Credibility.

Claimant alleges that the ALJ erred in assessing her credibility. (Document No. 12 at 5-9.) A

two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2013); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). A claimant's "statements alone are not enough to establish that there is a physical or mental impairment." 20 C.F.R. §§ 404.1529(a) and 416.929(a) (2013) If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.  Craig v. Chater, 76 F.3d at 595.  When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative.  Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). In Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (citing Craig v. Chater, 76 F.3d at 595), the Fourth Circuit stated:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2013). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior

work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:

      (I) Your daily activities;

      (ii) The location, duration, frequency, and intensity of your pain or other symptoms.

      (iii) Precipitating and aggravating factors;

      (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

      (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

      (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

      (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2013).

      SSR 96-7p repeats the two-step regulatory provisions:

      First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

      Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the

adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 229.) The ALJ found at the first step of the analysis that

11

Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 231.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 230-31.) At the second step of the analysis, the ALJ concluded that "the [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. at 231.)

In her decision, the ALJ acknowledged Claimant's testimony, summarized the medical and opinion evidence of record, acknowledged Claimant's activities of daily living, and acknowledged her history of narcotic addiction. (Tr. at 226-27, 230-32.) The ALJ however, noted severe discrepancies between Claimant's testimony and the medical record. (Tr. at 231.) Specifically, although Claimant testified that her January 2010, cervical surgery took away pain for only six to twelve months, the medical record demonstrated that she reported that her pain was controlled with pain medications and that she did well following surgery. (Tr. at 231, 748, 1114.) Although Claimant testified to difficulty using her hands and arms, the ALJ noted that nerve conduction studies revealed no loss of strength or other abnormalities. (Tr. at 231, 795, 1031.) Claimant testified she was limited significantly by her back and legs and was able to walk only 50 to 100 feet, could stand only ten minutes, could sit only 30 minutes, could lift only five pounds, and was unable to stand on her right side. (Tr. at 231.) Nevertheless, her form Function Reports dated August 12, 2011, and January 3, 2012, contradicted these restrictions. (Tr. at 231, 402-03, 468-70.) Claimant reported that she shopped one or two times a month for three to four hours, was able to lift ten to twenty pounds, and was able to walk a couple blocks. (Id.)

The ALJ also found that Claimant's testimony was undermined by her evasive responses and responses that were contrary to the evidence that she was admitted for detox in December 2005. (Tr.

12

at 231, 600.) Finally, the ALJ found that Claimant's testimony regarding her activities was inconsistent with the evidence. (Tr. at 231.) Claimant testified that she was out of bed on a daily basis for only 30 minutes and did not cook, complete household chores, or use the computer to socialize with others. (Tr. at 231, 252-54, 257.) The ALJ found however, that Claimant's testimony conflicted with her reports of activities in the form Function Reports. (Tr. at 231, 398-401, 466-69.) Claimant reported on her forms that she prepared simple meals once a week, did laundry and basic cleaning, shopped once or twice a month for three to four hours, read, watched television, went to the movies., and played on the computer and video game consoles. (Id.) Thus, the ALJ concluded that Claimant's credibility was undermined by the evidence of record.

The ALJ also concluded that Claimant's testimony was inconsistent with the opinion evidence of Dr. Parikshak, M.D., a State agency consultant, who found that Claimant's capabilities were consistent with a limited range of light exertional level work. (Tr. at 232, 1094-98.)

In summarizing Claimant's testimony, the ALJ acknowledged the extent and nature of Claimant's impairments and resulting symptoms, her treatment and limitations, and her activities. (Tr. at 230-31.) The ALJ also acknowledged Claimant's testimony that she experienced no significant medication side effects. (Tr. at 230, 245.)

Claimant also argues that the ALJ's use of boilerplate credibility language warrants remand "because such language provides no basis to determine what weight the [ALJ] gave the Plaintiff's testimony." (Document No. 12 at 9.) Pursuant to SSR 96-7p, the ALJ "must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4. "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." Id. The decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific

to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." <u>Id.</u>

Although Claimant takes issue with the ALJ's use of boilerplate language, she fails to identify any specific deficiency in the ALJ's using such language. The decision reflects that the ALJ went on to explain the specific reasons for her credibility determination and specifically cited the medical evidence, Claimant's testimony and reports, Claimant's activities, and the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), and the Fourth Circuit has not enunciated any format that should be utilized in finding a claimant's testimony incredible. In finding that Claimant was not credible, the ALJ indicated the weight given to Claimant's testimony. Accordingly, pursuant to SSR 96-7p, the Court finds that the ALJ's credibility finding sufficiently was articulated and explained with references to the specific evidence that formed her decision. Thus, the Court finds that the ALJ's credibility decision is supported by substantial evidence of record.

2. <u>Appeals Council Evidence</u>.

Claimant also argues that the Appeals Council erred in summarily dismissing new and material evidence submitted to the Appeals Council subsequent to the ALJ's decision. (Document No. 12 at 9-11.) In considering Claimant's argument for remand, the Court notes initially that the social security regulations allow two types of remand. Under the fourth sentence of 42 U.S.C. § 405(g), the court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the evidence. 42 U.S.C. § 405(g); <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 97-98, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). Where there is new medical evidence, the court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence. 42 U.S.C. § 405(g); <u>Melkonyan</u>, 501 U.S. at 98, 111 S.Ct. at 2163.

14

The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute. <u>Melkonyan</u>, 501 U.S. at 98, 111 S.Ct. at 2163.

Pursuant to 28 U.S.C. § 405(g), remand is warranted "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]"[2] If new and material evidence is submitted after the ALJ's decision, the Appeals Council

> shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. §§ 404.1570(b); 404.970(b) (2013). Evidence is "new" if it is not duplicative or cumulative. <u>Wilkins v. Secretary, Dep't of Health & Human Serv.</u>, 953 F.2d 93, 96 (4th Cir. 1991)(<i>en banc</i>). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." <u>Id.</u>  The Regulations governing the circumstances under which the Appeals Council is to review an ALJ decision shows that additional evidence will not be considered

---

[2] Sentence six of 42 U.S.C. § 405(g) provides:

The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

*unless* the evidence is new and material and relates to the period on or before the date of the ALJ

decision. See 20 C.F.R. §§ 404.1570(b); 404.970(b) (2013).  This does not mean that the evidence

had to have existed during that period. Rather, evidence must be considered if it has any bearing

upon whether the Claimant was disabled during the relevant period of time. See Wooldridge v.

Bowen, 816 F.2d 157, 160 (4th Cir. 1987); Cox v. Heckler, 770 F.2d 411, 413 (4th Cir. 1985);

Leviner v. Richardson, 443 F.2d 1338, 1343 (4th Cir. 1971). "Pursuant to the regulations . . . , if

additional evidence submitted by a claimant does not relate to the time period on or before the ALJ's

decision, the evidence is returned to the claimant, and the claimant is advised about her rights to file

a new application." Adkins v. Barnhart, 2003 WL 21105103, *5 (S.D. W.Va. May 5, 2003).[3]

As discussed above, the evidence submitted to the Appeals Council consisted of treatment

records and opinion evidence. (Tr. at 10-212.) In concluding that Claimant was "permanently and

totally disabled for all types of employment," Dr. Guberman relied heavily upon the historical

evidence that was presented to the ALJ, in addition to his examination findings. (Tr. at 10-18.) Dr.

---

[3] Under the fourth sentence of 42 U.S.C. § 405(g), the Court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the evidence. 42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97 (1991). Where there is new medical evidence, the Court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence.  42 U.S.C. § 405(g); Melkonyan, 501 U.S. at 97. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute. Melkonyan, 501 U.S. at 98.

To justify a remand to consider newly submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985). In *Borders*, the Fourth Circuit held that newly discovered evidence may warrant a remand to the Commissioner if four prerequisites are met:  (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence.  *Id.*

Guberman also completed a form physical medical assessment of ability to work, on which he again opined that Claimant was unable to work. (Tr. at 19-22.) The undersigned notes that Dr. Guberman's examination and assessment were conducted on May 24, 2013, which was more than three months after the ALJ's decision. Likewise, the medical records from Dr. Alberico, dated March 4, 2013, through March 31, 2014, as well as the medical records from St. Mary's Medical Center dated March 28, 2014, and the treatment records from Prestera Center for Mental Health, dated March 16, 2013, through April 30, 2014, all post-dated the ALJ's decision. (Tr. at 92-144, 145-83, 184-86.) The Appeals Council properly determined that further review of such evidence should be had in a further application for benefits.

Dr. Razavipour's June 13, 2013, Mental Status Assessment also post-dated the ALJ's decision and failed to indicate that the assessment related back to the relevant period. (Tr. at 1311-14.) The medical records from Drs. Woolums and Wyner, which in part preceded the ALJ's decision, regarded urology issues, failed to present significant findings, and would not have altered the ALJ's decision. (Tr. at 1224-44.) Such evidence is not material. Likewise, the medical records from Drs. Woolums and Wyner, dated April 17, 2013, through February 20, 2014, post-dated the ALJ's decision and failed to indicate any relation back to Claimant's conditions existing prior to or at the time of the ALJ's decision. (Tr. at 187-212.)

Similarly, the medical records from Dr. Albaddawi, dated January 29, 2013, which preceded the ALJ's decision, consisted of a well adult health check that failed to reveal any significant findings on examination. (Tr. at 1300-06.) Dr. Albaddawi continued Claimant's diagnoses and refilled her medications. (Tr. at 1304-05.) These medical records therefore, are not material. Dr. Albaddawi's medical records, dated February 20, 2013, through April 17, 2014, post-dated the ALJ's decision. (Tr. at 33-91.)

The treatment records from Prestera Center dated February 22, 2012, through December 14, 2012, was not material in that it was consistent with the evidence already provided by Prestera Center and failed to present any significant findings that would have altered the ALJ's decision. (Tr. at 1245-99.) The same holds for the medical records from Associated Physical Therapists, dated January 14, 2013, through March 6, 2013. (Tr. at 1307-10.) Such evidence failed to reveal any significant findings that would have altered the ALJ's decision.

Accordingly, the Court finds that the evidence submitted initially to the Appeals Council primarily post-dated the ALJ's decision, and therefore did not affect the decision as to whether Claimant was disabled during the relevant period. To the extent that such additional evidence pre-dated the ALJ's decision, the Court finds that there is a lack of reasonable probability that the evidence would have changed the ALJ's decision, and therefore, is immaterial. The additional evidence therefore, does not warrant remand.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 13.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

.      The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 30, 2015.

R. Clarke VanDervort
United States Magistrate Judge

18